## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Tracy Taylor,

Petitioner,

vs.                                                     REPORT AND RECOMMENDATION

C. Holinka, Warden

Respondent.                    Civ. No. 05-144  (DWF/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Petition of Tracy Taylor for a Writ of Habeas Corpus, under Title 28 U.S.C. §2241.  The Petitioner claims the Federal Bureau of Prisons has denied him the opportunity to have his sentence reduced, pursuant to Title 18 U.S.C. § 3621(e), in violation of his rights under Federal law and the Constitution.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be dismissed.

## II. Facts and Procedural Background

On September 7, 1989, the Petitioner was sentenced to an one- hundred eighty-eight (188) month prison term, to be followed by a sixty (60) month consecutive sentence, by the United States District Court for the Western District of Missouri.  The Petitioner was sentenced following a conviction for "Possession with Intent to Distribute Cocaine Base (Crack)," in violation of Title 21 U.S.C. §841(a)(1) & (b)(1)(a), and for "Use of Firearms During a Drug Trafficking Crime," in violation of Title 18 U.S.C. §924(c).  See, Declaration of Angela Buege ("Buege Dec."), Docket No. 6, at 1-2.

On January 29, 1997, the Petitioner was resentenced for the Section 841(a) conviction to a two-hundred thirty-five (235) month prison term, which he is currently serving.  The Petitioner's Section 924(c) conviction was dismissed on the Motion of the United States.  Id.  The Petitioner appealed his sentence, which was affirmed by the Court of Appeals for the Eighth Circuit.  See, United States v. Taylor, 121 F.3d 713 (8th Cir. 1997)[unpublished], cert. denied, 522 U.S. 1036 (1997); Order and Unpublished Opinion, Buege Dec., Attach. C.

On March 11, 1998, the Petitioner, while incarcerated at the Federal Correctional Institution in Lompoc, California ("FCI Lompoc"), began participation in a five-

hundred (500) hour Residential Drug Abuse Program ("RDAP"). <u>Buege Dec., Attach.</u>

<u>F.</u>; <u>Respondent's Response to Petitioner's Habeas Petition</u>, <u>Docket No. 5</u>, at 5.

RDAP is a program provided by the Federal Bureau of Prisons ("BOP"), pursuant to

Title 18 U.S.C. §3621(b). According to that Statute, the BOP is directed to "make

available appropriate substance abuse treatment for each prisoner the [BOP]

determines has a treatable condition of substance addiction or abuse." <u>Title 18 U.S.C.</u>

<u>§3621(b)</u>. The RDAP program is "a course of individual and group activities

provided by a team of drug abuse treatment specialists and the drug abuse treatment

coordinator in a treatment unit set apart from the general prison population, lasting a

minimum of 500 hours over a six to twelve-month period." <u>28 C.F.R. §550.56</u>.

In order to qualify for participation in the RDAP, an inmate must meet all of the

following criteria:

> (1)     The inmate must have a verifiable documented drug
> abuse problem.
>
> (2)     The inmate must have no serious mental impairment
> which would substantially interfere with or preclude full
> participation in the program.
>
> (3)     The inmate must sign an agreement acknowledging
> his/her program responsibility.

(4)   Ordinarily, the inmate must be within thirty-six months of release.

(5)   The security level of the residential program institution must be appropriate for the inmate.

28 C.F.R. § 550.56(a).

In order to give inmates an additional incentive to participate in the RDAP, Congress has authorized the BOP to grant sentence reductions of up to one year for those who successfully complete the program. This authority comes from Section 3621(e)(2) (B), which provides as follows:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

Congress did not define the term "prisoner convicted of a nonviolent offense," which would encompass the largest potential class of inmates who would be eligible for a sentence reduction upon completion of the RDAP.

In a first attempt to construe the Statute, the BOP promulgated a Regulation, which defined the term "nonviolent offense," as employed in Section 3621(e)(2)(B), in the negative, by incorporating the following statutory definition of "crime of violence:"

> An inmate who completes a residential drug abuse treatment program during his or her current commitment may be eligible for early release by a period not to exceed 12 months, in accordance with paragraph (a) of this section * * * <u>unless the inmate's current offense is determined to be a crime of violence</u> as defined in 18 U.S.C. §924(c)* * *.

<u>28 C.F.R. §550.58</u> [emphasis added][later amended].

According to Title 18 U.S.C. § 924(c)(3), the term "crime of violence" is defined as:

> [A]n offense that is a felony and --
>
>> (A)   has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>>
>> (B)   that by its nature, involves a substantial risk that physical force against the person or property of another may be used in committing the offense.

On July 24, 1995, the BOP issued Program Statement ("P.S.") 5162.02 which, in pertinent part, enumerated the offenses that the BOP then categorized as "crimes of violence." P.S. 5162.02 also identified certain "offense characteristics," which were reflected in sentencing enhancement factors, and which might cause the BOP to treat a particular offense as a "crime of violence" for purposes of Section 3621(e)(2)(B).

One such enhancement factor was the possession of a firearm.   See, <u>Martin v. Gerlinski</u>, 133 F.3d 1076, 1078-79 (8th Cir. 1998).[1]

The BOP modified its offense classification scheme for determining an inmate's eligibility for early release, by amending Title 28 C.F.R. Section 550.58, and its Program Statements.  The Regulation was amended and published as an "interim rule" on October 15, 1997, with an effective date of October 9, 1997.  See, Early Release Consideration, 62 <u>Fed. Reg.</u> 53,690, 53,690 (1997).  The amended Regulation, which was adopted according to a notice and comment procedure, no longer incorporated

---

[1]In <u>Martin</u>, the Court explained the relevant portion of the Program Statement as follows:

> To further interpret the term 'crime of violence,' the BOP issued Program Statement 5162.02 (July 24, 1995), which contains an exhaustive list of criminal offenses it has found to be crimes of violence.  Section 9 provides that one category of criminal offenses may be crimes of violence depending on the specific offense characteristic assigned. Where, at the time of sentence, the district court makes a finding that the offense involved violence, and this finding is reflected in the section of the presentence investigation report entitled, "Specific Offense Characteristics," that conviction is considered a 'crime of violence.'  Section 9 cites as an example a defendant who has been convicted of manufacturing drugs and receives a 2-level enhancement for possession of a firearm.

<u>Martin v. Gerlinski</u>, 133 F.3d 1076, 1078-79 (8th Cir. 1998).

the definition of a "crime of violence," as contained in Section 924(c).[2]  Instead, the new Section 550.58(a) states that inmates, who are convicted of nonviolent offenses, may be eligible for a sentence reduction, but it sets forth a listing of "[a]dditional early release criteria," as follows:

> (1)    As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:
>
> *    *    *
>
> (vi)    Inmates whose offense is a felony:
>
> (A)    That has as an element, the actual, attempted or threatened use of physical force against the person or property of another, or

---

[2]The BOP described its purpose, in amending the Regulation, as a response to conflicting judicial interpretations of the provision, in the following terms:

> The interim rule published on May 25, 1995, attempted to define the term "crime of violence" pursuant to 18 U.S.C. 924(c)(3).  Because of differences in application of case law among the various Federal courts, a few crimes would be clearly covered by the Bureau's definition.  This interim rule avoids this complication by using the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude inmates whose current offense is a felony * * * that involved the carrying, possession, or the use of a firearm or other dangerous weapon or explosives * * *.

Early Release Consideration, 62 Fed. Reg. 53,690 (amending 28 C.F.R. §550.58).

> (B)    That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device) * * *.

28 C.F.R. §550.58.

The final version of the Regulation was adopted on December 22, 2000.  See, 65 Fed. Reg. 80,745 (2000).

In addition, on October 9, 1997, the BOP promulgated a new Program Statement -- P.S. 5162.04, entitled "Categorization of Offenses" -- in which the BOP lists, at Section 6, those offenses that, in all cases, are considered to be "crimes of violence."  See, Buege Dec.; Ex. E.  The new Program Statement also lists, at Section 7, "Offenses That At The Director's Discretion Shall Preclude An Inmate's Receiving Certain Benefits."  According to Section 5 of P.S. 5162.04:

> Section 7 lists offenses that are not categorized as crimes of violence, but would nevertheless preclude an inmate's receiving certain Bureau program benefits at the Director's discretion * * *.  [I]f an inmate is convicted of an offense listed in Section 7, the inmate should be denied a program benefit <u>because he or she committed an offense identified at the Director's discretion, rather than a crime of violence</u>.

[Emphasis added].

Section 7 of P.S. 5162.04 provides that inmates, who are convicted of felonies "involving the carrying, possession, or use of a firearm or other dangerous weapon or explosive," will be precluded from certain "program benefits," including the

-8-

opportunity for a reduced sentence under Section 3621(e)(2)(B). Thus, under the new

P.S. 5162.04, a prisoner, such as the Petitioner, who has been convicted of an offense

with a sentence enhancement for possession of a firearm, will be barred from receiving

a reduced sentence -- not because he has been convicted of a violent offense, but

because the BOP has exercised its discretion in determining that he should not be

granted an opportunity for early release.

On September 9, 1997, Petitioner was initially determined to be eligible for early

release under Title 18 U.S.C. §3621(e).  See, Buege Dec.; Att. F.  On March 11, 1998,

BOP staff informed the Petitioner that, after another eligibility review, he was

determined to be ineligible for early release under Title 18 U.S.C. §3621(e).  See,

Buege Dec.; Att. D.  The basis for the Petitioner's 1998 eligibility determination

stemmed from an assessment of the circumstances in his case, as compared against

P.S. 5162.04, which is entitled "Categorization of Offenses," and which was

implemented on October 9, 1997 -- the effective date of the revised Rule contained in

Title 28 C.F.R. §550.58.  The Petitioner's offense was not deemed to be a "crime of

violence," which would cause him to be statutorily disqualified from receiving a

sentence reduction under Section 3621(e)(2)(B).   However, even though the

Petitioner's offense was not deemed to be a "crime of violence," he was ineligible for

a reduced sentence, under Section 3621(e)(2)(B), based upon the BOP Director's discretion as contained in P.S. 5162.04.  Id.

The Petitioner began treatment in the RDAP program on March  11, 1998, and completed the RDAP on May 28, 1999, at FCI Lompoc.  See, Buege Dec., Att. F. Petitioner was designated to the Federal Correctional Institution in Waseca, Minnesota ("FCI Waseca"), on May 13, 2004.  See, Buege Dec., at unnumbered 2.  Petitioner has a projected release date of January 11, 2006 via Good Conduct Time release.  Id.

Petitioner sought formal review of his eligibility for a sentence reduction through the BOP administrative remedy procedures.  See, Petitioner's Petition for Writ of Habeas Corpus; Docket No. 1, Att. B-F.  After exhausting his administrative remedies on all levels, the Petitioner, on January, 24, 2005, filed his present application for Habeas Corpus relief, under Title 28 U.S.C. §2241.  At that time, he was still incarcerated at FCI Waseca.  The Petitioner asks us to issue a Writ of Habeas Corpus that would direct the BOP to find him eligible for a one-year sentence reduction, under Section 3621(e)(2)(B).  In contrast, the Respondent contends that the Petitioner's application should be dismissed, because the Petitioner, under the standards implemented under the discretion of the Director, was appropriately found to be ineligible for early release.

For reasons which follow, we agree with the Respondent's position, and therefore, we recommend that the Petition be dismissed.

### III.   Discussion

The Petitioner filed this Habeas Petition under 28 U.S.C. §2241, alleging that the BOP failed to comply with the Administrative Procedures Act ("APA") in promulgating P.S. 5162.04.  In addition, the Petitioner asserts that his constitutional right of Due Process, and Equal Protection under the laws, were violated by denying him an early release after his completion of the RDAP pursuant to 18 U.S.C. §3621(e)(2)(B).  We address each of the contentions in turn.

### A.   Was the BOP Required to Follow the Procedural Requirements of the APA in promulgating Program Statement 5162.04?

Administrative agencies are required, under the APA, to provide for notice and comment before promulgating a rule.[3]  See, Title 5 U.S.C. §553(b).  Additionally,

---

[3]In regard to the procedures required for rule making, Section 553 of the APA states as follows:

> (b)   General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include--
>
> (1)   a statement of the time, place, and

publication in the Federal Register of a substantive rule shall not be made less than thirty (30) days before the effective date. See, <u>Title 5 U.S.C. §553(d)</u>. However,

---

nature of public rule making proceedings;

(2)     reference to the legal authority under which the rule is proposed; and

(3)     either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply--

(A)     to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B)     when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

<u>Title 5 U.S.C. §533(b)</u>.

interpretive rules are statutorily exempted from notice and comment procedures.  See,
Title 5 U.S.C. §553(b) and (d).

The distinctions  between an "interpretive," and a "substantive" rule, are not
addressed in the APA, leaving the Courts to muddle through the resulting morass.
One Court has attempted to parse out the differences by stating that a "substantive rule
'grants rights, imposes obligations, or produces other significant effects on private
interests,' while an interpretive rule is an agency's 'intended course of action, its
tentative view of the meaning of a particular statutory term, or internal house-keeping
measures organizing agency activities.'"  See, White v. Shalala, 7 F.3d 296, 303 (2d.
Cir 1993).   One commentator has summarized the multiple Courts' approaches as
"'fuzzy,' 'tenuous,' 'blurred,' 'baffling,' and 'enshrouded in considerable smog.'"
Elizabeth Williams, Annotation, What Constitutes "Interpretative Rule" of Agency so
as to Exempt Such Action from Notice Requirements of Administrative Procedure Act
(5 U.S.C. § 553(b)(3)(A)), 126 A.L.R. Fed. 347, 375 (1995)(surveying the distinctions
relied upon in multiple cases).

Thankfully, the Supreme Court has provided guidance, by stating that BOP
Program Statements are "internal agency guideline[s]," and are "akin to an 'interpretive
rule' that 'do[es] not require notice and comment."  See, Reno v. Koray, 515 U.S. 50,

-13-

61 (1995).  Numerous Courts have followed this determination, and have  generally found that BOP Program Statements are exempt from formal notice and comment requirements.  See, e.g., <u>Grassi v. Hood</u>, 251 F.3d 1218, 1220 (9th Cir. 2001)(quoting <u>Reno v. Koray</u>, supra); <u>Egan v. Hawk,</u> 983 F. Supp. 858, 861 (D. Minn. 1997); <u>Sicard v. City of Sioux City</u>, 950 F. Supp. 1420, 1434 (N.D. Iowa 1996); see also, <u>Henrikson v. Guzik</u>, 249 F.3d 395, 398 (5th Cir. 2001).

Not every Program Statement, however, has been exempted from the notice and comment procedure.  One such BOP Program Statement -- P.S. 5162.02 -- was found by a number of Circuits  to cross the boundary between an interpretive and legislative rule, and was found invalidly promulgated in keeping with the APA procedures.  See, e.g., <u>Martin v. Gerlinski</u>, supra at 1079 ("We conclude Section 9 of the Program Statement constitutes a legislative rather than an interpretive rule, because it does not merely "explain" what is a 'crime of violence' within the parameters of the meaning of the offense itself or by way of the definition accorded it under the regulation; it expands the scope of the conduct under consideration, thus extending the reach of the regulation."); see also <u>Fristoe v. Thompson</u>, 144 F.3d 627, 631 (10th Cir. 1998); <u>Byrd v. Hasty</u>, 142 F.3d 1395, 1397 (11th Cir. 1998); <u>Bush v. Pitzer</u>, 133 F.3d 455, 457 (7th Cir. 1997); <u>Roussos v. Menifree</u>, 122 F. 3d 159, 162-64 (3rd Cir. 1997).

-14-

The BOP later promulgated P.S. 5162.04 in response to the judicial determinations that the BOP had failed to follow APA procedure in issuing P.S. 5162.02. The critical difference between the Program Statements is that the newer version vests the Director of the BOP with discretion in determining whom to exclude from early release under Title 18 U.S.C. §3621(e) rather than engaging in explicit statutory interpretation of the term "nonviolent offense." See, Gunderson v. Hood, 268 F.3d 1149, 1152 (9th Cir. 2001).

Our Court of Appeals addressed the validity of Title 28 C.F.R. §558.58, and P.S. 5162.04, in Bellis v. Davis, 186 F.3d 1092 (8th Cir. 1999), aff'd sub nom. Lopez v. Davis, 531 U.S. 230 (2001), which adopted the BOP's arguments as they have been advanced here. In Bellis, a number of prisoners, who either "had been convicted of being a felon in possession of a firearm, or * * * had received a sentencing enhancement under the federal sentencing guidelines for possession of a dangerous weapon during the commission of a federal drug offense," complained because the BOP had exercised its discretion, as explicated in P.S. 5162.04, so as to deny the prisoners' request for a sentence reduction, even though the prisoners either had completed, or were scheduled to complete, the BOP's RDAP . Id. at 1092. Although

the District Court had been persuaded that the prisoner's were entitled to Habeas

relief, the Court of Appeals reversed that decision, explaining as follows:

> The BOP chose to exercise the discretion granted to it under the statute by identifying additional categories of inmates who are ineligible for the early-release program because, although their offenses may be "nonviolent" within the meaning of the statute, their underlying conduct indicates that they pose a serious risk to public safety. We think that the BOP's decision to exclude these additional categories of inmates from eligibility represents a manifestly permissible construction of the statute and an appropriate exercise of the BOP's discretion.
>
> \*   \*   \*
>
> We conclude that the BOP acted within its authority in excluding the [prisoners] from the early-release program under 18 U.S.C. §3621(e)(2).

Id. at 1095.

An appeal of the decision, in Bellis, was taken to the United States Supreme Court

which affirmed the reasoning of our Court of Appeals, and concluded as follows:

> Having decided that the Bureau may categorically exclude prisoners based on their preconviction conduct, we further hold that the regulation excluding Lopez is permissible. The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision.

-16-

Lopez v. Davis, supra at 244.[4]

The Eighth Circuit has reconfirmed the validity of the Regulation, and P.S. 5162.04, subsequent to the rulings in Bellis and Lopez. See Grove v. Federal Bureau of Prisons, 245 F.3d 743, 746-47 (8th Cir. 2001).  The Petitioner urges us to deviate from Bellis, and instead, to apply King v. Morrison, 231 F.3d 1094 (8th Cir. 2000), see Petitioner's Traverse to Respondent's Opposition to Petitioner's Motion, Docket No.9, at 4.  In King, an inmate completed the RDAP program on April 11, 1997, and was denied early release under a determination made in accordance with P.S. 5162.02. See, King v. Morrison, supra at  1095, 1097.  In King, the Court found that P.S. 5162.02 failed to comply with APA procedural requirements, and hence, that it lacked authority to render the inmate ineligible for early release.  Id. at 1096-97.  However, the Court noted that the Bellis decision would control if the inmate had not completed the RDAP program prior to October of 1997, when P.S. 5162.04 went into effect.  Id. at 1097.

---

[4]While upholding the Regulation, the Supreme Court did not address whether the BOP violated the notice and comment procedure of the APA in issuing the interim 1997 rule, as the issue was not raised.  See, Lopez v. Davis,  531 U.S. 230, 244 n. 6 (2001).

Other Courts, particularly in the Ninth Circuit, have questioned the validity of both Section 550.58, and P.S. 5162.04.  In fact, the Petitioner predicates much of his argument on the holding of Bohner v. Daniels, 243 F. Supp. 2d 1171 (D. Or. 2003), aff'd, Paulsen v. Daniels, 413 F.3d 999, 1008 (9th Cir. 2005), which found the interim 1997 regulation, that is codified at Section 550.58(a), to be a "substantive" rule and invalid for failing to provide thirty (30) days for the notice and comment required by Section 553(b), (c) and (d) of the APA .  See Bohner v. Daniels, supra at 1175-76. One District Court, in the wake of Paulsen, has also invalidated P.S. 5162.04.  See, Wade v. Daniels, 373 F. Supp.  2d  1201, 1204 (D. Or. 2005)(declaring P.S. 5162.04 a "substantive" rule that failed to comply with the notice and comment rulemaking requirements of the APA without further comment).  Still other courts have disagreed with the Ninth Circuit, and have recently determined that P.S. 5162.04 is an "interpretive" rule, interpreting both Title 18 U.S.C. §3621(e), and the final 2000 codification of Regulation 28 C.F.R. §550.58.  See, e.g., Sizemore v. Marberry, 2005 WL 1684132 at *3-4 (E.D. Mich. 2005).

Absent reversal by the a Court of superior jurisdiction, we are obligated to adhere to the precedent established in Lopez v. Davis, supra at 244, Bellis v. Davis, supra at 1092, and Grove v. Federal Bureau of Prisons, supra at 746-47, which all have

-18-

upheld the validity of the BOP's Program Statement 5162.04 as falling within the discretion of the BOP Director.  The invitation of the Petitioner to extend <u>King</u> is improper, as the Petitioner did not complete the RDAP program until May of 1999, well after the effective date specified in <u>King v. Morrison</u>, supra at 1097.  Even if, as the Petitioner suggests, the 1997 interim regulation in 28 C.F.R. §550.58 were improperly promulgated -- and we make no such determination here -- the Program Statement would not be affected as it is an "internal agency guideline" that merely vests discretion in the Director to interpret what Title 18 U.S.C. §3621(e) defines as a "nonviolent offense."  See, <u>Grassi v. Hood</u>, supra at 1221;  <u>Sizemore v. Marberry</u>, supra at *3-4; see also, <u>Reno v. Koray</u>, supra at 61 (finding BOP Program Statements are "internal agency guidelines," that are interpretive rules not subject to APA notice and comment procedures);  <u>Egan v. Hawk,</u> supra at 861.

Therefore, as P.S. 5162.04 has been determined to be an "interpretive" rule, the notice and comment procedure requirements of the APA are inapplicable.  See <u>Title 5 U.S.C. §§553(b) and (d)(2)</u>; see also, <u>Grassi v. Hood</u>, supra at 220.  With the recognized substantive validity of 28 C.F.R. §550.58(a), and P.S. 5162.04, it is well within the discretion of the BOP Director to deny eligibility for early release under Title

28 U.S.C. §3621(e). Therefore, we recommend that the Petitioner's request for Habeas relief on this ground be denied.

      B.     <u>Were the Petitioner's Constitutional Rights Violated By the BOP's Discretion in Denying Consideration for Early Release Under Title 18 U.S.C. Section 3621(e)</u>?

The Petitioner's second claim alleges that the BOP's reliance upon the discretion of the Director, rather than upon an interpretation of the term "nonviolent offense," violates his constitutional rights of Due Process, and Equal Protection under the Fifth and Fourteenth amendments, by denying the Petitioner a consideration for early release consistent with Title 18 U.S.C. §3621(e).

Simply put, the equal protection clause mandates that all persons, who are similarly situated, should be treated alike. See, <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985); <u>More v. Farrier</u>, 984 F.2d 269 (8th Cir. 1993). The guarantee of equal protection is not a source of substantive rights or liberties, but rather, is a right to be free from invidious discrimination in statutory classifications and other Government entitlements. <u>Harris v. McRae</u>, 448 U.S. 297, 322 (1980), reh'g denied, 448 U.S. 917 (1980). An action claiming a violation of this right must show on its face that some element of intentional or purposeful discrimination accompanied the unequal treatment. See, <u>Snowden v. Hughes</u>, 321 U.S. 1, 8 (1944). The

-20-

discriminatory purpose essential to an equal protection claim implies more than intent or volition; rather, it implies that the violator selected or reaffirmed a particular course of action at least in part because of -- not merely in spite of -- its adverse effects upon an identifiable group.  McCleskey v. Kemp, 481 U.S. 279, 298 (1987).

In Divers v. Department of Corrections, 921 F.2d 191 (8th Cir. 1990), our Court of Appeals held that principles of equal protection might be violated if a prisoner received treatment that was "invidiously dissimilar" to that received by other, similarly situated inmates.  Id. at 193; see also, Wishon v. Gammon, 978 F.2d 446, 450 (8th Cir. 1992); Flittie v. Solem, 827 F.2d 276, 281 (8th Cir. 1987).  However, any apparent infringement of the Plaintiff's equal protection rights, which is brought about by means of prison Regulations or policies, must be judged by a deferential standard, i.e., whether the policies are reasonably related to legitimate penological interests.  See Turner v. Safley, 482 U.S. 78, 84 (1987).

Here, the BOP has argued, and the Supreme Court has affirmed, that denial of early release to inmates who possessed a firearm in connection with their current offenses reasonably and rationally can be enacted in the interest of public safety, as such inmates have shown a "readiness to endanger another's life."  See, Lopez v. Davis, supra at 721-22.  Therefore, the BOP's decision to utilize its allotted discretion

and deny early release to said inmates in the interest of public safety meets the deferential standard, and cannot be construed to have violated any equal protection right possessed by the Petitioner.

In regards to the Petitioner's Due Process claim, we find no basis for finding that any violation has occurred here.  Section 3621(e) has not granted an entitlement to a mandatory reduction upon the Petitioner's completion of the RDAP, but has provided that a prisoner's early release entirely lies in the discretion of the BOP.  See, 18 U.S.C. § 3621(e)(2)(B) (stating that a prisoner's time in custody "**may** be reduced by the Bureau of Prisons")[emphasis added]; Lopez v. Davis, supra at 241; Bellis v. Davis, supra at 1094; Smith v. Reese, 2001 WL 530548 at *2 (D. Minn., May 17, 2001)("Pursuant to §3621(e)(2)(B), if an inmate serving a sentence for a conviction of a nonviolent offense successfully completes the RDAP, then the BOP has the authority, but not the duty, to reduce the inmate's term of imprisonment.").  Consequently, in the absence of an entitlement, the denial of early release to an inmate, under the BOP's discretion of Section 3621(b) is not a cognizable Due Process offense.  See, Sesler v. Pitzer, 926 F. Supp. 130, 132-33 (D. Minn. 1996)(finding no recognizable Due Process claim under a similar factual situation); see also, Hernandez v. Lindeman, 2002 WL 31163074 at *3 (D. Minn., September 24, 2002)("Therefore,

-22-

because [the petitioner] possesses no liberty interest in the early release program under §3621(e), the Court overrules his objection in this regard."). Therefore, we find Petitioner's constitutional rights were not violated.

NOW, THEREFORE, It is  - -

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be dismissed, with prejudice.

Dated:  August 29, 2005                         s/Raymond  L.  Erickson
                                                Raymond L. Erickson
                                                UNITED  STATES  MAGISTRATE  JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than September 16, 2005,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 16, 2005,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.